**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| HUMBERTO VIDAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; JAMIESON GREER, in his official capacity as United States Trade Representative; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 26-04437<br><br>28 U.S.C. §1581(i)(1)<br><br>Three Judge Panel Requested |

**COMPLAINT**

**COMES NOW,** the Plaintiff, Humberto Vidal, Inc. (hereinafter referred to as "Plaintiff"), by and through the undersigned attorney, and for its Complaint respectfully states, alleges and prays as follows:

**I. JURISDICTION**

1. This Honorable Court has exclusive subject-matter jurisdiction over this action under 28 U.S.C. §1581(i)(1). See Learning Resources, Inc. v. Trump, 146 S.Ct. 628, 637n.1 (2026).

2. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. §1585. In a civil action under 28 U.S.C. §1581, the Court can enter a money judgment against the United States and can order any other appropriate

civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§2643(a)(1), (c)(1).

3. Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful Section 301 duties as implemented and collected by United States Customs and Border Protection (hereinafter "CBP"). As a result of the President's Memorandum challenged by this lawsuit, Plaintiff has paid not less than $115,057.36 in Section 301 duties to the United States, as of September 28, 2026, and thus has suffered injury caused by those orders. This amount will continue to increase due to Plaintiff's continued import activities. Declaratory and injunctive relief from this Court would redress those injuries. See 28 U.S.C. §2631(i).

4. Plaintiff also faces imminent and irreparable harm because entries for which it paid Section 301 duties are subject to imminent liquidation.

## II. PARTIES

5. Plaintiff, Humberto Vidal, Inc., is a United States Corporation, incorporated in the Commonwealth of Puerto Rico, a territory of the United States, with registry number 26235. Its physical address is Edif. Medina Center Arzuaga, 112 Floor 10, Río Piedras, PR, 00925-3306 and its mailing address is 21480, San Juan, PR,

00928-1480. Plaintiff is a U.S.-based importer of merchandise subject to the challenged duties.

6. Defendant United States Customs and Border Protection ("CBP") is a component agency of the United States Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

7. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

8. Defendant Office of the United States Trade Representative is the federal agency responsible for developing United States trade policy. It is headquartered in Washington, D.C.

9. Defendant Jamieson Greer is the United States Trade Representative and is sued in his official capacity.

10. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. §702 and 28 U.S.C. §1581(i)(1)(B).

11. Defendants are referred to collectively in this Complaint as "the U.S. Government".

12. This action challenges tariffs imposed on imported merchandise from several countries pursuant to Section 301 of the Trade Act of 1974, 19 U.S.C. § 2411 on July 23, 2026.[1]

---

[1] Pub. L. 93-618, title III, §301, as added Pub. L. 96-39, title IX, §901, July 26, 1979, 93 Stat. 295; amended Pub. L. 98-573, title III, §304(a)-(c), (f), Oct. 30, 1984, 98 Stat. 3002, 3005; Pub. L. 100-418, title I, §1301(a), Aug. 23, 1988, 102

13. The President of the United States described his reasoning in a Memorandum for the United States Trade Representative. The challenged tariffs impose ad valorem duties of 10 or 12.5 percent on merchandise from the affected countries, representing approximately 99.4% of all imports into the United States.[3]

14. The tariffs were imposed in response to the alleged failure of these countries to impose and enforce adequate prohibitions on the importation of goods made with forced labor.

15. The Section 301 tariffs were designed to preserve substantially the same broad tariff regime that this Court and the Supreme Court have held Congress did not authorize under the International Emergency Economic Powers Act (hereinafter "IEEPA") and Section 122 of the Trade Act of 1974, codified under 19 U.S.C. §2411.

16. The imposition of the challenged tariffs exceeds the authority Congress granted in Section 301. Section 301 requires specificity regarding the countries and practices to be remedied. It permits the Trade Representative to act only upon a determination that a specific practice of another country is unreasonable or discriminatory and burdens or restricts United States commerce. See 19 U.S.C.§ 2411(b)(1).

17. Furthermore, any responsive action must be directed to that specific practice. See id at § 2411(b)(2).

Stat. 1164; Pub. L. 103-465, title III, §314(a)-(c), title VI, §621(a)(9), Dec. 8, 1994, 108 Stat. 4939, 4940, 4993; Pub. L. 104-295, §20(c)(4), Oct. 11, 1996, 110 Stat. 3528; Pub. L. 114-125, title VI, §§602(b)(1), 607, Feb. 24, 2016, 130 Stat. 184, 189.

18. The general purpose of Section 301 is to eliminate identified foreign practices; it is not an all-encompassing authorization to, essentially, tax all imports from all trading partners of the United States.

19. The Trade Representative did not provide an explanation based on his investigative record for his determinations or for his Decision to impose nearly the same duties upon sixty (60) countries with distinct enforcement records and trade profiles.

20. In the alternative, if Section 301 indeed authorizes such broad duties across all imports and trading partners, it would constitute an unconstitutional delegation of the tariff power under Article I of the Constitution of the United States.

## III. FACTUAL ALLEGATIONS

21. The Constitution sets forth the powers of the Legislative Branch, including the "Power To lay and collect Taxes, Duties, Imposts and Excises." U.S. Const. art. I, § 8, cl. 1.

22. The Framers did not vest any part of the taxing power in the Executive Branch. See Learning Resources, 146 S.Ct. at 638. When Congress grants the President the power to impose tariffs, "it does so clearly and with careful constraints." Id. at 644.

23. On February 20th, 2026, the Supreme Court stated "The President asserts the extraordinary power to unilaterally impose tariffs of unlimited amount, duration, and scope. In light of the breadth, history, and constitutional context of that asserted

authority, he must identify clear congressional authorization to exercise it." Learning Resources, 146 S.Ct. at 646.

24. Title III of the Trade Act of 1974, codified as amended at 19 U.S.C. §§ 2411-2420, establishes a statutory framework governing United States trade action in response to specified practices of foreign countries.

25. Section 301 provides for mandatory action under Section 301(a)and discretionary action under Section 301(b).

26. Section 301(a) requires action where the Trade Representative determines that (1) the rights of the United States under a trade agreement are being denied; or (2) a foreign country's act, policy, or practice violates or is inconsistent with the provisions of, or otherwise denies benefits to the United States under, a trade agreement, or is unjustifiable and burdens or restricts United States commerce. 19 U.S.C. § 2411(a).

27. If those conditions are met, the Trade Representative must take action, subject to the limitations and exceptions prescribed by the statute. See id.

28. Section 301(b) authorizes discretionary action only when the Trade Representative determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce," and that action is appropriate. Id. at § 2411(b).

29. Any action taken under Section 301(b) is subject to statutory conditions: the Trade Representative may act "subject to the specific direction, if any, of the President," and "shall take all appropriate and feasible action authorized under [Section 301(c)] . . . to obtain the elimination of that act, policy, or practice." 19 U.S.C. § 2411(b)(2).

30. The Trade Representative may act under Section 301(b) when a foreign act, policy, or practice is "unreasonable or discriminatory and burdens or restricts United States commerce."[2]

31. Among the examples of acts, policies and practices addressed by the statute are the denial of worker rights, export targeting, and market access barriers. See 19 U.S.C. § 2411(d)(3)(B).

32. On June 2, 2026, the Trade Representative determined that certain acts, policies, and practices of the sixty (60) investigated economies relating to the failure to impose or effectively enforce prohibitions on the importation of goods made with forced labor were unreasonable and burdened or restricted United States commerce.

33. The Trade Representative issued his final determinations on July 23, 2026.

34. The President ordered the Trade Representative to impose tariffs of 10% or 12.5% on goods from the investigated economies, subject to specified exemptions.

---

[2] "Unreasonable" is defined in § 2411(d)(3) to include practices that are "unfair and inequitable" even if not in violation of any international obligation.

35. The Trade Representative implemented the corresponding tariff rates in accordance with the specific direction of the President.

36. The Trade Representative's report lacks specific analysis on the way in which each of the sixty (60) investigated countries' forced-labor prohibition regimes and enforcement practices burden or restrict United States commerce. It further lacks explanation of how the imposed duties of 10% and 12.5% on these different countries constitute responsive action for each of their distinct practices.

37. The Trade Representative reasoned that U.S.-based products were being displaced by goods produced by forced labor. Pursuant to the President's Memorandum, the targeted economies' lack of enforcement of import prohibition on goods produced by using forced labor is unreasonable and constitutes a burden on United States commerce because:

a. it undermines the universal aim of ending forced labor;

b. permits entities using forced labor to produce more cheaply and distort market conditions;

c. undermines the profitability of entities that do not use forced labor; and,

d. contributes to circumventing the prohibitions on imports produced by forced labor.

38. The President's Memorandum shares the structure of the unlawful IEEPA and Section 122 tariffs.

39. The Trade Representative failed to explain how the particular act, policy, or practice identified for each investigated economy

burdens or restricts United States commerce pursuant to 19 U.S.C. § 2411(b)(1).

40. Furthermore, the Trade Representative did not explain why the duty rates were selected and how they would eliminate the specific practice identified in each investigation. The Section 301 tariffs were imposed with no meaningful consideration of the issues presented by investigations of multiple countries. Plaintiff imports goods from several countries targeted by the duties imposed pursuant to Section 301.

41. The imposition of these tariffs pursuant to Section 301 will force Plaintiff to raise prices on its imported goods. Plaintiff has already paid the amount of $115,057.36, as of September 28, 2026, and estimates that this amount will increase significantly while the Section 301 tariffs remain in effect.

42. Plaintiff has suffered, and will continue to suffer, severe harm due to the unlawful imposition of these tariffs under Section 301.

## IV. <u>FIRST CAUSE OF ACTION</u>

### THE TARIFFS IMPOSED BY THE PRESIDENT PURSUANT TO SECTION 301 ARE *ULTRA VIRES*

43. Plaintiff hereby incorporates by reference paragraphs 1-42 as if fully set forth herein.

44. Section 301 is not a blanket delegation of authority to impose general tariffs.

45. The Trade Representative may take action pursuant to Section 301(b) only when it determines that an "act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce," and such action is appropriate. 19 U.S.C. § 2411(b)(1).

46. If those conditions are met, Section 301(b) authorizes action only to obtain "the elimination of that act, policy, or practice." 19 U.S.C. § 2411(b)(2).

47. The imposition of ad valorem duties of 10% to 12.5% pursuant to Section 301, as described in the President's Memorandum, exceeded the above-described specific statutory limits because Defendants failed to make a determination that a specific foreign act, policy, or practice is unreasonable or discriminatory and constitutes a burden or restriction to the commerce of the United States, in the case of each individual country or economy.

48. The Trade Representative cannot circumvent the very specific requirements of Section 301 by merely stating that forced labor is unlawful, wrongful and harmful to the commerce of the United States.

49. Not every practice in another country that may be considered questionable may warrant the imposition of tariffs pursuant to Section 301.

50. A measure, such as the imposition of a tariff, must be taken "to obtain the elimination of that act, policy, or practice." 19 U.S.C. § 2411(b)(2).

51. The tariffs wrongfully and unlawfully imposed pursuant to Section 301 caused, and are causing, irreparable harm to Plaintiff.

## V. SECOND CAUSE OF ACTION

### THE PRESIDENT'S MEMORANDUM IMPOSING TARIFFS UNDER SECTION 301 IS UNLAWFUL BECAUSE IT IS ARBITRARY, AND CAPRICIOUS

52. Plaintiff hereby incorporates by reference paragraphs 1-51 as if fully set forth herein.

53. The Administrative Procedure Act (hereinafter "APA") establishes the type of administrative actions subject to judicial review:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. §704.

54. The APA also requires a reviewing court to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

55. When exercising its rulemaking powers, an agency must assess the relevant data, consider the corresponding issues, satisfactorily justify its action, and establish a rational connection between the facts and its choices.

56. An agency may not rely on conclusory statements, discard important evidence, or offer a justification that is contrary to the administrative record.

57. In the instant case, the Trade Representative failed to reasonably justify its action, based on the administrative record, and establish that the alleged acts, policies, or practices of each of the 60 targeted countries burden or restrict United States commerce.

58. Thus, the imposition of duties pursuant to Section 301, as described in the President’s Memorandum, is arbitrary and capricious.

59. On the other hand, the Trade Representative relied on generalizations of the purported damage caused by forced labor and goods made with forced labor to the economy.

60. The Trade Representative failed to adequately explain how the commercial practices of each country, with respect to goods made by forced labor, constitute a burden on United States commerce.

61. A self-serving assertion that forced labor affects global trade does not constitute rational support for the imposition of tariffs on a specific country’s goods, under Section 301, without an explanation of that country’s specific role in burdening United States commerce.

62. Since the Trade Representative has failed to articulate any connection between his actions and the use of forced labor on the affected goods, the duties imposed under Section 301 are arbitrary and capricious, must be held unlawful and set aside.

63. The tariffs arbitrarily and capriciously imposed pursuant to Section 301 caused, and are causing, irreparable harm to Plaintiff.

## VI. THIRD CAUSE OF ACTION

### IN THE ALTERNATIVE, THE PRESIDENT'S MEMORANDUM IMPOSING TARIFFS UNDER SECTION 301 IS UNCONSTITUTIONAL

64. Plaintiff hereby incorporates by reference paragraphs 1-63 as if fully set forth herein.

65. In the alternative, if this Honorable Court were to construe Section 301 as authorizing the challenged tariffs, the President's Memorandum, and the subsequent actions by the Trade Representative, must nevertheless be held unlawful because, in that event, Section 301 would constitute an impermissible delegation of legislative power from Congress to the President.

66. The United States Constitution vests in Congress exclusively the power to "lay and collect . . . Duties." U.S. CONST. art. I, §8, cl. 1.

67. Under the doctrine of separation of powers, as well as binding precedent of the United States Supreme Court, Congress cannot delegate its power to the President unless it provides an intelligible principle

that directs and meaningfully constrains the President's exercise of that power. Section 301 does not do that.

68. The President's interpretation of Section 301, and the Trade Representative's subsequent action, provide no intelligible principle limiting the imposition of tariffs.

69. Therefore, Plaintiff seeks a declaration that the President's Memorandum is unconstitutional as to Plaintiff, enjoin Defendants from enforcing it as to Plaintiff, and order the refund of all duties collected from Plaintiff pursuant to the President's Memorandum, under Section 301, with interest as provided by law.

## VII. FOURTH CAUSE OF ACTION

## DECLARATORY RELIEF

70. Plaintiff hereby incorporates by reference paragraphs 1-69 as if fully set forth herein.

71. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. §2201(a).

72. Plaintiff's claims present an actual controversy as to the President's authority under Section 301, the constitutionality of Section 301, and the authority of the Trade Representative and CBP to implement and collect the resulting tariffs. As a result of the aforesaid unlawful imposition of tariffs by the Defendants, Plaintiff has suffered actual prejudice and seeks this Honorable Court's Declaratory Judgment regarding its rights and duties under the terms of

Section 301 and the Constitution of the United States. Until such time as the Plaintiff is able to have its rights and responsibilities under said statute and the Constitution clearly determined, Plaintiff is subject to uncertainty with respect to its responsibilities and obligations under the law.

73. Plaintiff is an importer of record and has suffered injury by having been required to pay duties pursuant to Section 301 as a result of the President's Memorandum, and the subsequent actions by the Trade Representative and CBP, on goods it has imported into the United States. As a result of the Defendants' unlawful imposition of tariffs and corresponding collection efforts, a real and justiciable issue exists with respect to the existence of valuable rights under Section 301 and the Constitution of the United States, and a *bona fide*, actual and present dispute exists calling for this Honorable Court's Declaratory Judgment.

74. This Court can exercise its equitable power to enter a declaratory judgment that the President's Memorandum, and the subsequent actions by the Trade Representative, are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff.

**WHEREFORE**, Plaintiff Humberto Vidal, Inc. respectfully requests that this Court:

i. declare that the President lacks authority under Section 301 to set the challenged tariff;

ii. declare that the President's Memorandum, and the subsequent actions by the Trade Representative, are *ultra vires* and void *ab initio* with respect to Plaintiff;

iii. declare that, with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the President's Memorandum;

iv. with respect to Plaintiff, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the President's Memorandum;

v. order the United States to refund to Plaintiff the Section 301 duties collected on those entries, which as of September 28, 2026, correspond to an amount not less than $115,057.36, amount that will continue to increase due to Plaintiff's continued import activities, with interest as provided by law;

vi. award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

vii. grant such further relief as this Honorable Court deems proper.

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which

will send notification of such filing to all counsel and parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 9th day of October,2026.

**SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ, PSC**
166 Ave. De la Constitución
San Juan, PR 00901
Tel.: (787) 289-9250
Fax: (787) 289-9253
E-mail: msosa@scvrlaw.com

s/Manuel Sosa Báez
Manuel Sosa Báez
USDC-PR: 218807
Counsel for Plaintiff